NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | 21-cv-00475 (SRC) |
| v. | : | |
| | : | |
| THOMAS V. SAVINO | : | OPINION |
| | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion filed by Petitioner Thomas Savino ("Petitioner") to vacate, set aside, and correct his sentence pursuant to 28 U.S.C. § 2255. The United States of America (the "Government") has opposed the motion. The Court has considered the written submissions and determined that oral argument is not necessary. For the reasons that follow, the petition will be denied.

**I.   BACKGROUND**

In late 2016, a grand jury charged Petitioner with ten counts: one count for conspiracy to violate the federal Anti-Kickback Statute and Travel Act and to defraud patients of honest services, three counts of illegal renumeration in violation of the federal Anti-Kickback Statute, three counts of use of the mail and facilities in interstate commerce and interstate travel to promote, carry on, and facilitate commercial bribery, and three counts of a scheme to defraud patients of honest services by accepting concealed bribes. All these charges arose out of Petitioner's alleged participation with a bribery scheme involving Biodiagnostic Laboratory Services ("BLS"), a clinical blood laboratory headquartered in New Jersey. Before he was arrested, Petitioner operated

1

his own medical practice in a New York office building that he owned. This building also had an additional suite, which Petitioner claimed he rented out to BLS. Prior to trial, Petitioner moved to dismiss all counts, arguing, among other things, that as a doctor practicing medicine solely in New York, he was not subject to New Jersey's Commercial Bribery statute (the "NJCBS"), N.J.S.A. § 2C:21-10. (16-cr-00582, ECF No. 80, at 3–19.) The Court denied Petitioner's motion on April 18, 2017. (16-cr-00582, ECF No. 18.) A jury found Petitioner guilty on all ten counts and the Court sentenced Petitioner to 48 months imprisonment on each count, to run concurrently. (16-cr-00582, ECF No. 68.) Petitioner appealed to the Third Circuit which, in September of 2019, rejected Petitioner's arguments and affirmed this Court's judgment and Petitioner's sentence. United States v. Savino, 788 F. App'x 869, 873 (3d Cir. 2019).[1]

**II. DISCUSSION**

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an

---

[1] Additionally, Defendant filed a Rule 33 motion for a new trial based on allegedly newly discovered evidence demonstrating that BLS and Petitioner were licensed by the State of New York at all relevant times. The Court denied the motion on June 11, 2021. (16-cr-00582, ECF No. 109.)

2

omission inconsistent with the rudimentary demands of fair procedure." United States v. Horsley, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting Hill v. United States, 368 U.S. 424, 429 (1962)), cert. denied 444 U.S. 865 (1979); see also Morelli v. United States, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

Petitioner asserts that his trial counsel was constitutionally ineffective. The standard which applies to such claims is well established:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in Strickland v. Washington, 466 U.S. 668 (1984). To make out such a claim under Strickland, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687; see also United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." Strickland, 466 U.S. at 687; Shedrick, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. Id. The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. Id. In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. Id. at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

3

> confidence in the outcome." Id. at 694; see also Shedrick, 493 F.3d at 299. Where a "petition contains no factual matter regarding Strickland's prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010).

Judge, 119 F. Supp. 3d at 280-81.

Petitioner identifies four ways in which his counsel's performance was constitutionally defective. First, he claims his counsel was ineffective when counsel failed to present evidence that BLS was licensed in New York which, if it had been used at trial, would have exonerated Petitioner. Second, he claims that his appellate counsel was ineffective by its failure to appeal the Court's denial of Petitioner's pre-trial motions to dismiss the charges against him, where the pre-trial motions argued that New York law, rather than New Jersey law, controlled. Third, he claims that trial counsel's failure to call witnesses demonstrating that Petitioner could have legally rented the office space at issue amounted to ineffective assistance. Fourth, Petitioner claims that his counsel provided ineffective assistance where it failed to "properly and timely" object to the Probation Office's calculation of the improper benefit subject to sentencing.[2]

---

[2]   28 U.S.C. § 2255(b) requires an evidentiary hearing for all motions brought pursuant to the statute "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005); United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." Judge v. United States, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); see also Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); see also United States v. Tuyen Quang Pham, 587 F. App'x 6, 8 (3d Cir. 2014); Booth, 432 F.3d at 546.  For the reasons set forth below, Petitioner's claims are clearly without merit and no hearing is warranted in this matter.

A.  **Petitioner's Trial and Appellate Counsel Provided Constitutionally Sufficient Representation.**

Petitioner lodges several challenges concerning his counsel's performance at trial and related challenges to his appellate counsel's failure to appeal those deficiencies. These challenges fail to demonstrate that either Petitioner's trial counsel's or appellate counsel's performance fell below an objective standard of reasonableness as required by Strickland, nor has he established any prejudice from any such ineffective representation.

1.  BLS's New York Licensure was Irrelevant as a Matter of Law and Fact.

Petitioner first claims that his trial counsel failed to review evidence which, if it had been used at trial, would have exonerated Petitioner. Specifically, Petitioner claims that, in discovery, the Government produced evidence demonstrating that BLS was in possession of an active New York license at the time. (Pet. at 5.) According to Petitioner, this evidence demonstrates that New Jersey law did not apply to BLS's rental of the suite, rather that New York law applied. (Id.) Under this theory, Petitioner's actions with BLS would only be regulated under New York law and cannot be subjected to federal law or the NJCBS. While the Government provided Petitioner this evidence in pre-trial discovery, his counsel did not use it to support his arguments for dismissal in his pretrial motions.

Despite the great weight that Petitioner places on this piece of evidence—claiming that "no reasonable fact finder would have found [him] guilty" considering the New York licensure—it was irrelevant. According to Petitioner, the fact that BLS is licensed in New York is sufficient to relieve him of liability under the Travel Act as a matter of law, but it does no such thing.[3] The

---

[3]    To set forth a violation of the Travel Act, 18 U.S.C. § 1952, the government must prove (1) interstate travel or use of the mail or any interstate facility, (2) with the intent to distribute the proceeds of unlawful activity or otherwise further unlawful activity. United States v. Bencivengo, 749 F.3d 205,

evidence presented at trial demonstrated that Petitioner received bribes from BLS, a New Jersey company, the cash used to bribe Petitioner originated in New Jersey, in exchange for the bribes, Petitioner knowingly referred his patients' blood to New Jersey, and BLS analyzed the blood in New Jersey. (ECF No. 1, at ¶¶1(a), 6, 10(h), 11(b), (f), (h), (j), (m), (p)). As the Third Circuit explained when it found that this evidence was more than sufficient to sustain the conviction against Petitioner, out-of-state conduct under the NJCBS can serve as a predicate offense under the Travel Act. United States v. Savino, 788 F. App'x 869, 873–74 (3d Cir. 2019). Petitioner fails to explain how the existence of a New York license changes the underlying facts that his conduct was directed to New Jersey and—as this Court has found and the Third Circuit has affirmed—the NJCBS was properly applied to him based on that conduct.

Nor could this evidence have had a material impact on the jury's findings for the simple reason that evidence demonstrating BLS' New York licensure was presented at trial. Scott Nicoll, a BLS employee and Government witness, testified at Petitioner's trial that BLS had a New York license. (Trial Tr. Vol. 2, at 131 (ECF No. 87).) Furthermore, Government witness Cliff Antell testified that BLS had a patient service center in Staten Island, giving rise to the inescapable inference that BLS was licensed in New York. (Id. at 130-131; Tr. Vol. 3, at 313 (ECF No. 88).) Because the evidence at issue was presented to the jury, Petitioner is unable to establish that he suffered "actual prejudice" from any purported error. E.g. Gibson v. Beard, No. CV 10-445, 2015 WL 10381753, at *30 (E.D. Pa. July 28, 2015), report and recommendation adopted, 165 F. Supp. 3d 286 (E.D. Pa. 2016), aff'd sub nom. Gibson v. Sec'y Pennsylvania Dep't of Corr., 718 F. App'x

---

213-14 (3d Cir. 2014). "Unlawful activity" is defined by the Act to include "extortion, bribery, or arson in violation of the laws of the State in which [the unlawful activity is] committed or of the United States[.]" 18 U.S.C. § 1952(b)(2). As applied to Petitioner's conviction, the predicate unlawful activity was a violation of the NJCBS.

126 (3d Cir. 2017) (declining to fault trial counsel's failure to present evidence where the jury nevertheless became aware of the evidence).

        2. <u>Petitioner's Proposed Witness Testimony Would Have Been Irrelevant.</u>

  Similarly, Petitioner's claim that his counsel failed to present certain witness testimony is insufficient to establish an ineffective assistance of counsel claim under <u>Strickland</u>. According to Petitioner, the testimony which counsel failed to procure went to Petitioner's state of mind in his dealings with his co-conspirators—such as during a recorded conversation he had with co-conspirator Antell—and to the fact that "under New York law the physician building owner is not prohibited to [sic] receive rental payments from laboratories." (Pet. Reply at 14.) Petitioner asserts that this robbed the jury of the "opportunity to determine if petitioner had a sufficient nexus" to New Jersey for the application of the NJCBS. (<u>Id</u>.)

  In effect, Petitioner is arguing that counsel should have offered testimony and evidence at trial demonstrating that he could have legally rented the space at issue. As Petitioner concedes, though, his primary defense at trial was that he <u>actually rented</u> the office suite to BLS,[4] , and the Government never contended that it was illegal for him to rent the space—only that he had not done so and had received the money as a bribe. Whether or not BLS could have rented a space from Petitioner and operated a patient service center in New Jersey, the jury concluded that BLS did not rent the facility from Petitioner and instead paid bribes to Petitioner in return for patient referrals. It is reasonable that trial counsel would not have called witnesses to provide such collateral evidence. <u>See, e.g.</u>, <u>Clark v. Ricci</u>, 285 F. App'x 933, 935–36 (3d Cir. 2008) ("Clark

---

[4] Pet. Reply at 8 ("The defense theory was that some but not all of his patients had their blood tested by BLS and that the location was truly used as a rental space in petitioner' [sic] building as a service for petitioner's patients and not a bribe for the referral of testing of blood samples.")

7

also contends that trial counsel was ineffective in failing to call certain witnesses. . . . He has not shown that any of those 'witnesses' would have provided relevant evidence."). Specifically, Petitioner complains that his counsel failed to pursue the certain testimony and evidence:

- <u>Testimony demonstrating that the suite was rented to BLS at fair market value</u>. Initially, the Court notes that there has been no demonstration by Petitioner that such testimony could have been or is available. Indeed, Petitioner has not submitted any proposed expert proffer to that effect. Cf. <u>D'Amario v. United States</u>, 403 F. Supp. 2d 361, 372 (D.N.J. 2005) ("Prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said"). Assuming, <u>arguendo</u>, that the fair market rental value was equivalent to the amount of the bribe paid, testimony to that effect would have been largely irrelevant since the Government never contended that the funds were anything other than the fair market value—but rather, it argued, and the jury found, that whatever the fair value might have been, the payments were disguised bribes.

- <u>Testimony demonstrating that BLS obtained approval from the New York City Board of Standards and Appeals to rent the suite</u>. Whether Petitioner could have legally rented the space was not at issue, and the Government did not argue that Petitioner could not have legally rented the space to BLS.

- <u>Testimony from the suite architect concerning the entry and exit access doors to the purportedly rented office space.</u> Evidence introduced at trial demonstrated that BLS did not have keys to any point of entrance or exit to the purportedly rented space. (Tr. Vol. 5, at 733 (ECF No. 84).) Accordingly, the location of any such points of entrance or egress would have been irrelevant.

- <u>Testimony from a Regulatory Compliance Officer regarding the office space's compliance with New York requirements</u>. Whether Petitioner complied with relevant regulations regarding the operation of a patient service center was not at issue, and the Government did not argue that Petitioner failed to comply with any such regulations.

- <u>Testimony demonstrating competing offers to rent the office space.</u> The Government introduced evidence at trial demonstrating that there was competing interest from another lab to rent the office space. (<u>See</u> Government Trial Exhibit 20b, at 3, 7.) Petitioner fails to explain how the requested testimony would be anything other than cumulative of that which the jury heard.

8

- <u>Testimony from a phlebotomist regarding the existence of BLS signage which indicated that BLS rented the rear office suite</u>. Testimony established that there was no sign indicating the presence of BLS which would have been visible to Petitioner's patients. (Tr. Vol. 5, at 745.) If the testimony which Petitioner seeks could establish that a sign existed, it would have been an interior sign that could only be seen by patients which Petitioner already sent back to the blood draw area and thus is of no moment.

3. <u>Appellate Counsel Was Not Obligated to Make Meritless Arguments.</u>

Similarly unavailing is Petitioner's claim that his counsel was ineffective by failing to appeal the Court's denial of Petitioner's motion to dismiss the charges against him on the ground that New Jersey law did not apply to him and thus could not act as a predicate underlying the Travel Act charge against him. As already noted, out-of-state conduct establishing a violation of the NJCBS can serve as a predicate offense under the Travel Act. Counsel was under no obligation to bring a losing argument before the Court of Appeals. <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Accordingly, it was entirely reasonable for appellate counsel to exclude this argument and thus counsel's performance suffices under <u>Strickland</u>. 466 U.S. at 687. For similar reasons, Petitioner cannot demonstrate that he was prejudiced by counsel's decision not to pursue the losing argument.

4. <u>Petitioner was Not Prejudiced by Counsel's Purported Deficiencies.</u>

Even if Petitioner was able to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness, he remains unable to demonstrate that counsel's deficient performance prejudiced his defense. The evidence against Petitioner at trial demonstrating that

the "rent" payments he received from BLS were intended as bribes for his patient referrals was more than just sufficient—it was overwhelming. As this Court has found previously, the recording of Petitioner speaking with Antell was "particularly devastating" to Petitioner's case:

> In that recording, Defendant was heard explaining that he could "get more money" from another lab because he had "good volume." In that recording, Defendant also kept inquiring whether another lab could do FSH tests, explaining that then perhaps he could "make another deal . . . because that's a big money maker" and that "FSH is the most important because that pays tremendously well." Moreover, Defendant was also heard saying on the recording that he "didn't make them [another lab] draw everybody's blood like [he] used to." As such, the evidence at trial, especially the recording of Defendant with Antell, overwhelmingly demonstrated that the payments Defendant received from BLS were intended as bribes.

(16-cr-00582, ECF No. 109 at 8 (internal citations omitted).) Indeed, when Petitioner appealed his conviction to the Third Circuit, it also concluded that the Government presented facts that "more than suffice[d] to sustain a jury verdict[,] as the 'Government presented ample circumstantial evidence that Petitioner intended to accept bribes from BLS.'" United States v. Savino, 788 F. App'x 869, 873 (3d Cir. 2019). With this context, it is clear that Petitioner has not demonstrated "a reasonable probability . . . sufficient to undermine confidence" in his conviction. Strickland, 466 U.S. at 694.

### B. Petitioner Was Not Prejudiced by Any Error Concerning His Sentencing.

Plaintiff contends that his counsel failed to issue a timely objection to a purported miscalculation of Petitioner's guidelines score. In particular, Petitioner argues that the Court improperly calculated the improper benefit that BLS earned through the bribery scheme, thus artificially inflating Petitioner's offense level. While it is true that the objection was initially

10

untimely, Petitioner's current challenge ignores the fact that this argument was ultimately litigated through appeal.

In its presentence investigation report (the "PSR"), the Probation Office calculated Petitioner's total adjusted offense level as 22. In Petitioner's sentencing memorandum, he contested, among other things, that the Guidelines calculation was incorrect because it considered in its offense level calculation the gross revenue which BLS obtained from Petitioner as part of the scheme. Instead, Petitioner argued that certain amounts must be removed from the calculation to arrive at the net improper benefit conferred upon BLS. (ECF No. 5-1.)

While the Court acknowledged that Petitioner's objections were untimely, it carefully considered—and rejected—his arguments on the merits at the sentencing hearing. (See 16-cr-00582, Sentencing Tr. 5:3–14:7 (ECF No. 89).) In affirming Petitioner's 48-month sentence, the Third Circuit found that this Court correctly calculated Petitioner's base offense level and further found that the Government supplied more than sufficient evidence to support a finding that the improper benefit at issue exceeded $250,000, resulting in the applied offense level.[5] Accordingly, Petitioner's delayed objections to the PSR had no impact on the ultimate sentence which Petitioner received.

Petitioner also contends that (i) his sentence was more than the maximum allowed by law and (ii) the Court at sentencing "allud[ed]" that Petitioner would receive a harsher sentence "because [he] exercised [his] constitutional right to plead not guilty." (Pet. at 6.) Both claims are meritless. As to the first, the maximum sentence for Counts 1–7 is 5 years and Counts 8–10 is 20

---

[5] Savino filed a petition for panel rehearing after the Third Circuit issued its opinion, which the panel denied. (See App. No. 18-2223, ECF No. 100.)

years.  Petitioner's sentence, at 48 months, is well below these statutory maximums.  And, despite Petitioner's concerns that he received a penalty for maintaining his innocence and going to trial, the Court expressly excluded this from consideration at Petitioner's sentencing.  (See Sentencing Tr. 43:20–25 ("Indeed, as you've indicated, Mr. Breslin [Petitioner's counsel], the doctor went to trial. The doctor asserted his innocence. He is entitled to continue to assert his innocence straight through the court process and the Court will not take into consideration that at this point he has not expressed remorse or contrition.").)[6]

**III.   CONCLUSION**

For the reasons explained in this Opinion, Petitioner's habeas petition is denied.  An appropriate order will issue.

/s/  Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Date:  October 28, 2021

---

[6] Petitioner also attempts to rope in the fact that his counsel failed to inform the Court at sentencing that BLS had an active New York license as a ground for contesting the sentence he received.  (Pet. at 6 ("My counsel also failed to inform the court at sentencing that it was legal to rent to BLS in New York as they had an active NY license and my reliance on them was justified as a NY licensed lab self certifies its occupancy in New York.").)  For the reasons already discussed, this challenge fails.